IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00878-FL

| | |
|---|---|
| MICHAEL A. MILES, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, -26] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael A. Miles ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on August 9, 2010, alleging disability beginning October 28, 2009. (R. 28, 155-61, 188). His claim was denied initially and upon reconsideration. (R. 101-26). A hearing before the Administrative Law Judge ("ALJ") was held on June 1, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 44-69). On July 26, 2012, the ALJ issued a decision

denying Claimant's request for benefits. (R. 28-43). On August 21, 2013, the Appeals Council denied Claimant's request for review. (R. 11-14). After receiving an extension of time to file a claim in federal court (R. 5-7), Claimant then filed his complaint seeking judicial review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) failing to sufficiently account for Claimant's moderate mental limitations in formulating the RFC and hypothetical to the VE, and (2) evaluating the opinion of Claimant's treating psychologist Dr. Joines. Pl.'s Mem. [DE-23] at 5-10.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 30). Next, the ALJ determined Claimant had the following severe impairments: cognitive disorder, degenerative joint disease, and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living and social functioning and moderate difficulties in concentration, persistence and pace with no episodes of decompensation. (R. 31).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following non-exertional limitations: performing only simple, routine, repetitive tasks, no production work, no fast-paced work environment with deadlines and quotas, and only occasional public interaction. (R. 32-37). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 33). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 38). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

opportunities that exist in significant numbers in the national economy. (R. 38-39).

**B.     Claimant's Testimony at the Administrative Hearing[2]**

At the time of Claimant's administrative hearing, he was 52 years old, divorced, living alone, and unemployed. (R. 48, 50). He is a college graduate with a degree in computer science and math and took part-time graduate courses in mental health counseling during the summer of 2011. (R. 49). Claimant has received no income since his employment disability benefits were terminated on December 21, 2011, and is living off savings. (R. 50, 64-65).

Claimant was last employed with GlaxoSmithKlein as a senior programmer analyst in the clinical data sciences department where his duties included computer programming for clinical trials. (R. 50). He began having problems timely completing his work due to slow thinking. (R. 52). Claimant took disability leave and then quit because he believed he would be fired after a new supervisor determined it took him two to three times longer than his peers to perform work assignments. *Id.*

Claimant receives psychological care from Dr. Vann Joines at the N.C. State Department of Health through his student health insurance. (R. 51). He began attending therapy group sessions with Dr. Joines in 2001, and then consulted with Dr. Joines when he began having problems at work. (R. 63). Claimant also has memory problems, and a neuropsychological assessment in July 2009 indicated he did not have dementia, although several memory tests rendered inconsistent results. (R. 61-62). Due to his memory problems, Claimant has to use a highlighter and take notes in his books, read through material twice, and review his notes, which he never had to do before. (R. 62-63).

---

[2] Claimant's physical impairments are not at issue in this appeal, Pl.'s Mem. at 2, and thus only the testimony regarding his cognitive impairments is recounted here.

5

Claimant underwent another psychological evaluation in May 2012, which showed essentially no change in his condition. (R. 63). He takes a friend to his neurology appointments to assist him because he misses things. (R. 65). Claimant takes Metformin for diabetes, Verapamil for blood pressure, and Relpax for migraines, and these medications cause no side effects. (R. 51, 202). Claimant believes he cannot return to his previous work due to his continued inability to concentrate. (R. 64).

### C. Vocational Expert's Testimony at the Administrative Hearing

Renee Evans testified as a VE at the administrative hearing. (R. 65-69). After the VE's testimony regarding Claimant's past relevant work (R. 66), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether there were any jobs the hypothetical individual could perform if limited to medium work and the performance of simple, routine, repetitive-type tasks, avoiding production work or similar fast-paced jobs with deadlines and quotas, and only occasional public interaction. (R. 66). The VE responded that an individual so limited could perform the jobs of laundry worker, Dictionary of Occupational Titles ("DOT") code 361.685-018, medium exertion level, SVP of 2; linen room attendant, DOT code 222.387-030, medium exertion level, SVP of 2; and marker, 369.687-026, medium exertion level, SVP of 2. *Id.* The ALJ next asked the VE whether there were any jobs the hypothetical individual could perform assuming he had the limitations described by Claimant, including that it would take him two to three times longer to do a task and he would need to elevate his feet for an hour after every hour of standing. (R. 66-67). The VE responded in the negative. (R. 67). The VE confirmed that her testimony did not conflict with the DOT. *Id.*

6

Claimant's counsel asked the VE if the need to elevate the feet were removed from the second hypothetical whether the result would change, and the VE responded that work would remain precluded. *Id.* Counsel next added the limitation of being able to maintain attention and concentration for up to two-thirds of an eight-hour workday. *Id.* The VE responded such a limitation would be equivalent to about 66 percent of the time, between two and a half to five and a half hours of the workday, and would preclude work. (R. 68). Counsel then added the limitation of being able to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances for up to two-thirds of the day, and the VE indicated work would be precluded. *Id.* Lastly, counsel added the limitation of being able to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods for up to two-thirds of the day. *Id.* The VE again responded that such a limitation would preclude work. *Id.*

## V. DISCUSSION

### A. The ALJ's Evaluation of Claimant's Mental Impairments

Claimant contends the ALJ erred in formulating the RFC and hypothetical to the VE by failing to sufficiently account for Claimant's moderate mental limitations—specifically his deficits in concentration, ability to perform activities within a schedule, maintain regular attendance, and complete a workday without interruptions from psychologically based symptoms—in conformity with the opinion of Claimant's treating psychologist Dr. Joines. Pl.'s Mem. at 5-10. The Commissioner contends that the ALJ appropriately accounted for Claimant's mental impairments and substantial evidence supports the decision. Def.'s Mem. [DE-27] at 9-15.

### 1. Assessment of Dr. Joines' Opinion

Claimant contends that the ALJ failed to sufficiently explain his rejection of the opinion of Claimant's treating psychologist Dr. Joines. Pl.'s Mem. at 6-7. Claimant specifically asserts that Dr. Joines defined "moderate" lapses in concentration as "[s]ome loss of ability . . . but can still sustain performance for 1/3 up to 2/3 of an 8-hour day" and that the VE testified lapses in concentration at this level would preclude all work. *Id.*

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are better able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking

8

into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Dr. Joines' May 30, 2012 opinion consisted of a letter accompanied by a form questionnaire summarizing Claimant's history of cognitive disorders and treatment, as well as Claimant's functional abilities. (R. 620-27). The ALJ addressed both in detail. (R. 36-37). First, the ALJ discussed Dr. Joines' treatment of Claimant and gave great weight to his opinion that Claimant's cognitive impairment had reduced his ability to effectively perform his job as a computer programer at the rate of speed required for that type of work. (R. 36-37, 620). Claimant does not appear to take issue with this portion of the ALJ's assessment of Dr. Joines' opinion.

The ALJ next discussed the information contained in the questionnaire filled out by Dr. Joines, noting Dr. Joines' opinion that: Claimant's impairment in processing speed appeared to be permanent; Claimant was not markedly impaired in any of his abilities, was moderately impaired in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the capability to work in coordination with and proximity with others without being distracted by them;

9

Claimant was moderately impaired in his ability to complete a normal workweek and workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and Claimant would have frequent deficiencies of concentration, persistence, and pace that resulted in a failure to complete tasks in a timely manner, but he would never be absent due to this impairment or treatment. (R. 37, 623-27). These limitations were indicated in a check-the-box fashion, with "moderate" being defined as "[s]ome loss of ability in the named activity but still can sustain performance for 1/3 up to 2/3 of an 8-hour workday." (R. 625-26). The ALJ gave Dr. Joines' form opinion some weight because while he agreed there were no marked deficiencies and Claimant would not have regular absences due to his cognitive impairment, he found the moderate impairments and limitations listed by Dr. Joines were concerns in his previous employment due to the high level work and concentration. (R. 37). The ALJ concluded these concerns were sufficiently addressed in the RFC and that Claimant could obtain other employment within his current abilities. *Id.*

The limitations indicated by Dr. Joines on the questionnaire are informed by his comments in the preceding opinion letter, in which he indicates that Claimant's cognitive limitations—specifically his relatively low processing speed—prevent him from performing his *past* work as a computer programmer. (R. 620). Furthermore, Claimant's neurological assessments repeatedly showed that his ability to concentrate and process data was relatively low in light of his high level of intellect, but was overall average. (R. 35, 370-71, 576-79, 597, 601, 614-17). Likewise, the opinion of the state agency consultant Dr. Salmony that Claimant was able to understand and remember simple three-step instructions and sustain concentration and attention for completion of simple, routine, repetitive tasks in a low-stress environment with low production

10

demands and low social contact supports the ALJ's decision to accord Dr. Joines' opinions contained in the questionnaire less weight. (R. 37, 121-23); *see Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (explaining the "testimony of a non-examining physician can be relied upon when it is consistent with the record . . . ") (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) (unpublished) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992) and citing 20 C.F.R. § 404.1527(d)). Here, the ALJ sufficiently explained the weight assigned to Dr. Joines' opinion, and the ALJ's decision not to fully adopt the limitations found in Dr. Joines' questionnaire is supported by substantial evidence.

Finally, the ALJ did not err in rejecting the VE's testimony elicited by Claimant's counsel incorporating the limitations from Dr. Joines' questionnaire answers because the ALJ did not adopt those limitations. (R. 67-68); *see Hawley v. Colvin*, No. 5:12-CV-260-FL, 2013 WL 6184954, at *3 (E.D.N.C. Nov. 25, 2013) (unpublished) ("[A]n ALJ 'need only pose those hypothetical questions that are based on substantial evidence and accurately reflect the plaintiff's limitations' as determined by the ALJ.") (quoting *Cannady v. Colvin*, 5:11-CV-112-FL, 2013 WL 655134 *2 (E.D.N.C. Feb. 22, 2013) (unpublished) (citations omitted) & citing *Mickles v. Shalala*, 29 F.3d 918, 929 n.7 (4th Cir.1994) (Luttig, J. concurring) (finding no error in hypothetical posed where "all of the exertional and non-exertional limitations which the ALJ found to exist, were included in the hypothetical")).

Accordingly, the ALJ did not err in his evaluation of Dr. Joines' opinion or in failing to fully incorporate the limitations from the opinion in the hypothetical to the VE.

11

### 2. The ALJ's RFC Assessment and Hypothetical to the VE

Claimant contends the ALJ failed to sufficiently account for his moderate mental limitations in the RFC and hypothetical to the VE. Pl.'s Mem. at 5-10. Claimant further argues that the ALJ's failure to make a specific finding regarding the frequency with which Claimant would have lapses or breaks in concentration was error. *Id.* at 6-7.

An individual's RFC is the capacity an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

In assessing the RFC, the ALJ must consider a claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."

12

S.S.R. 96-8p, 1996 WL 374184, at *1. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* Mental limitations and restrictions may impact a claimant's nonexertional capacity and "must be expressed in terms of work-related functions." *Id.* at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

When utilizing a VE, the ALJ must elicit testimony through "proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. Jan. 3, 2012) (unpublished) (rejecting claimant's objections to the ALJ's hypothetical to the VE where "the hypothetical presented . . . was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ"). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

Here, the ALJ found Claimant's mental impairments of cognitive disorder and depression to be severe, but that they did not rise to the level of severity required to meet a listing. (R. 30-32). The ALJ went on to evaluate Claimant's mental impairments in formulating the RFC, finding the evidence substantiated Claimant's cognitive problems that negatively impacted his prior employment. (R. 35). In doing so, the ALJ thoroughly discussed Claimant's testimony regarding his symptoms (R. 32-33), Claimant's medical records (R. 33-35), and the opinion evidence (R. 36-

13

37). Based on Claimant's cognitive problems, the ALJ incorporated into the RFC and the hypothetical to the VE the nonexertional limitations of performing only simple, routine, repetitive tasks, no production work, no fast-paced work environment with deadlines and quotas, and only occasional public interaction. (R. 37).

First, Claimant argues that the limitations of performing only simple, routine, repetitive tasks, no production work, no fast-paced work environment with deadlines and quotas, and only occasional public interaction were insufficient to account for Claimant's cognitive impairments in the RFC and hypothetical to the VE. However, such nonexertional limitations have been found to be sufficient in accounting for the type of moderate restrictions in concentration, persistence, and pace as the ALJ found in this case. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *14 (E.D.N.C. Sept. 11, 2014) (unpublished) (adopting memorandum and recommendation finding that "the ALJ's decision to include a limitation to simple, routine, and repetitive tasks is appropriate given the finding that Claimant experienced moderate difficulties with concentration, persistence, and pace."); *Knott v. Colvin*, No. 1:13CV332, 2014 WL 2453302, at *6 (M.D.N.C. June 2, 2014) (unpublished) (holding RFC and the hypothetical question correctly accounted for claimant's concentration limitation by restricting her to "simple repetitive tasks"); *Ransome v. Colvin*, No. 4:12-CV-253-FL, 2014 WL 237510, at *4-5 (E.D.N.C. Jan. 22, 2014) (unpublished) (adopting memorandum and recommendation finding no error in RFC determination where the ALJ accounted for Claimant's mental limitations, including moderate difficulties in maintaining concentration, persistence, and pace, by limiting claimant to unskilled work (i.e., simple, routine, repetitive tasks)).

Next, it was unnecessary for the ALJ to incorporate into the RFC or hypothetical to the VE a specific finding regarding the frequency with which Claimant would have concentration lapses.

Claimant suggests that while he may be able to perform simple, routine, repetitive tasks, he cannot persist in such tasks. Pl.'s Mem. at 6. However, in the ALJ's determination that Claimant can perform medium work with the listed nonexertional limitations, is the implicit finding that Claimant can maintain sufficient concentration to perform simple, routine, repetitive tasks on a "regular and continuing basis" despite his mental impairments. *See Gill v. Colvin*, No. 7:12-CV-72-FL, 2013 WL 1817353, at *8 (E.D.N.C. Mar. 4, 2013) (unpublished) (finding that "[h]ad the ALJ believed that claimant could not work an eight-hour workday, he would not have found plaintiff able to do light work"), *adopted by* 2013 WL 1817227 (E.D.N.C. Apr. 29, 2013).

Furthermore, the court has previously rejected, in the context of an ALJ's hypothetical to the VE, the argument that it was error for the ALJ not to address the frequency of a claimant's inability to concentrate. *Johnson v. Astrue*, No. 4:06-CV-274-FL, 2008 WL 704321, at *4 (E.D.N.C. Mar. 14, 2008) (unpublished). The court in *Johnson* determined that where the claimant was found by the ALJ to have moderate difficulties in maintaining concentration, persistence, and pace, a limitation to simple, routine, repetitive tasks in the hypothetical to the VE was sufficient to account for Claimant's mental deficiencies. *Id.* at *11; *see Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *4 (E.D.N.C. July 1, 2013) (unpublished) (finding limitation to unskilled work in the hypothetical to the VE was sufficient to account for ALJ's step three determination that Claimant had moderate limitations in concentration, persistence, and pace); *Collins v. Astrue*, No. 1:10CV189, 2011 WL 6440299, at *7 (W.D.N.C. Dec. 21, 2011) (unpublished) (rejecting argument that the ALJ erred by not directly including finding that claimant had a moderate limitation in concentration, persistence or pace in the RFC determination and hypothetical to the VE, where "the ALJ specifically accounted for the moderate restriction in concentration, persistence, or pace by limiting

15

Plaintiff to 'simple, repetitive work.'") (citation omitted). *But see Sutton v. Colvin*, No. 4:13-CV-131-BO, 2014 WL 4285061, at *2 (E.D.N.C. Aug. 29, 2014) (unpublished) (concluding, without discussion, that the ALJ's failure to include the frequency and duration of the claimant's lapses of concentration, persistence, and pace in the hypothetical to the VE and the RFC resulted in a flawed hypothetical). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (unpublished). Here, in limiting Claimant to simple, routine, repetitive tasks, no production work, no fast-paced work environment with deadlines and quotas, and only occasional public interaction, the ALJ appropriately exercised his discretion in crafting a hypothetical that sufficiently communicated to the VE what Claimant can and cannot do. *Id.* Accordingly, there was no error in the ALJ's failure to incorporate into the RFC and hypothetical to the VE a specific finding with respect to the frequency of Claimant's lapses in concentration.

Finally, the ALJ's comprehensive discussion of Claimant's limited ability to concentrate in formulating the RFC indicates he sufficiently considered this impairment. The ALJ detailed the following medical evidence with respect to Claimant's ability to maintain concentration: (1) Dr. Burgess's July 15, 2009 neuropsychological evaluation noted Claimant's overall performance with regard to sustained attention and concentration was within the average range; the information processing data were variable and generally lower than expected when compared to Claimant's level of intellect, but in the average range of complex information processing ability and average in the ability to multitask; and no major neuropsychological deficits were present, but the findings were more consistent with mild cognitive inefficiencies due to psychological distress, which if improved would eliminate significant cognitive deficits that would handicap Claimant's occupational

16

performance. (R. 33, 597, 601); (2) on September 18, 2009, Claimant reported to Dr. Hillsman that problems with memory, concentration, and attention were affecting his work and he worked much slower; however, upon examination Claimant's cognitive and routine memory testing were unremarkable. (R. 34, 370-71); (3) on October 19, 2009, Claimant saw Dr. Freedman who indicated that claimant had a lot of problems with attention deficit type symptoms and mental processing; he noted Dr. Burgess's opinion that Claimant had an adjustment disorder with mixed emotional features and an obsessive-compulsive personality disorder; and he indicated that medication would be a good idea, but that Claimant was opposed. (R. 34, 352-53); (4) Claimant's EEG was essentially normal. (R. 34, 354); (5) on December 9, 2010, Claimant underwent a cognitive evaluation with Dr. Kaufer, which showed overall Claimant performed "quite well" on cognitive examination; however, Claimant had mild retrieval memory difficulties and some difficulty on complex test of executive function; although relatively mild, these difficulties could be debilitating for someone who was used to functioning at such a high level; Claimant appeared to have relatively preserved cognitive functioning although clearly he had more difficulty performing high-level work-related tasks; and a Chinese herbal remedy was suggested. (R. 34, 576-79); and (6) Dr. Krasner's neuropsychological assessment showed most of Claimant's functioning fell within the normal to high normal range and his processing speed was relatively weak, likely due to depression; he recommended continued counseling, limiting graduate courses to seven credit hours per semester, and suggested a variety of study skills. (R. 35, 614-17). This constitutes substantial evidence supporting the ALJ's RFC determination and hypothetical to the VE.

Accordingly, the ALJ sufficiently accounted for Claimant's moderate mental limitations in the RFC and hypothetical to the VE and his decision is supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-26] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 21st day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge